## G. A. LANDRY v. THE STATE.

### No. 8106. Decided January 30, 1924.

**1.—Burglary—Evidence—Carrying Pistol—Other Offenses.**

Where, upon trial of burglary, the State, over the appellant's objection, proved that he had been convicted of the offense of carrying a pistol upon the occasion in question, held that the proof that defendant exhibited a pistol would have been admissible, but proof that he had been convicted of carrying a pistol was inadmissible, and its introduction was a violation of the rule forbidding the use of extraneous crimes.

**2.—Same—Argument of Counsel.**

The statement of the county attorney to the effect that forty-two chickens were stolen in Dayton and that forty-two chickens were found in the possession of the appellant was calculated to discredit the appellant's defense, and, therefore, error. Following Stanchel v. State, 89 Texas Crim. Rep., 358.

**3.—Same—Evidence—Charge of Court—Breaking.**

Where, upon trial of burglary, the evidence on the subject of breaking was circumstantial and was not such as would dispense with the necessity of instructing the jury that to constitute the offense of burglary under the indictment, there must be a breaking, and the charge of the court omitting this phase of the case presents reversible error. Following Bates v. State, 50 Texas Crim. Rep., 568, and other cases.

Appeal from the District Court of Liberty. Tried below before the Honorable J. M. Combs.

Appeal from a conviction of burglary; penalty. two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*Tom Garrard* and *Grover C. Morris,* Assistants Attorney General, for the State.

MORROW, PRESIDING JUDGE.—The appeal is from a conviction for the offense of burglary; punishment assessed at confinement in the penitentiary for a period of two years.

At the home of Doctor Tadlock in the village of Dayton, he owned a garage and a chicken house. The garage was divided into three

compartments. In the one in the center the car of the doctor's wife was kept. On the night of September 27th, the doctor, hearing a disturbance among his chickens, went into the yard and observed something or some one run out of the chicken house. He heard the sound of an automobile engine on the road nearby. He fired his pistol, and with the officer Lacy, in an automobile, overtook the party who was driving a truck. Lacy got out of the doctor's car and got on the running board of the truck, but he immediately got off, though he did not testify to his reason for doing so. Officers at another town were notified over the telephone, and they intercepted the truck which was driven by the appellant. On the following morning, Doctor Tadlock noticed that the door of the garage was open, and from it he missed a pair of gloves and a tube for an automobile casing. There was no lock on the door, but a wire twisted around a staple was used for fastening the door. According to his recollection the door had been fastened on the previous night. Lacy did not testify on the trial. In the car when the arrest was finally made was a pair of gloves. The sheriff took possession of the car containing the gloves. One of the gloves, according to his testimony, had disappeared. The other was exhibited on the trial and identified by Dr. Tadlock as one which belonged to him and which had been in the garage on the day before the occurrence mentioned. In the appellant's car were also found some chickens, nineteen of which were identified by Dr. Tadlock as belonging to him. What number of chickens were in the coops in the car was not disclosed by the evidence. The witness stated he did not know the number.

Appellant testified that the gloves found in his possession belonged to him and produced testimony of a merchant to the effect that he (appellant) had bought the gloves from him. Appellant also testified that he had bought the chickens in the neighborhood of the city of Houston and introduced two witnesses in support of this theory. He explained his effort to evade the officers and the refusal to stop at their command by the statement that he did not know that they were officers and that since it was in the night-time he was in fear of being robbed.

The State, over the appellant's objection, proved that he had been convicted of the offense of carrying a pistol upon the occasion in question. No pistol was found in his possession at the time of his arrest or seen in his possession at any time during the episode, though the circumstance described by Dr. Tadlock in which Lacy, after getting on the running-board of the appellant's car immediately got off of it, the appellant at the time having something in his hand, was doubtless a circumstance relied upon by the State to prove that the appellant had a pistol at the time and exhibited it. The proof that he had and exhibited a pistol would have been admissible, but proof that he had been *convicted* of carrying a pistol was not legitimate

proof, and its introduction was a violation of the rule forbidding the use of extraneous crimes. It was admissible under none of the exceptions to this rule. It was not legitimate impeaching testimony for the reason that carrying a pistol is not an offense involving moral turpitude.

The home of Dr. Tadlock was situated in the village of Dayton. State's counsel in his argument stated to the jury as a fact and as evidence of appellant's guilt that there were forty-two chickens lost in the town of Dayton on the night of the appellant's arrest and that there were forty-two chickens taken out of the appellant's truck at the time of his arrest. If this had been proved upon the trial, it would have been cogent testimony to identify the appellant as the person who entered the chicken house of Dr. Tadlock and to identify the appellant as the person who committed the burglary. It was affirmatively shown by the statement of facts and bills of exception that no such proof was made upon the trial. It was a material fact but not one which the State's attorney was authorized to bring into the case upon his own statement during the argument. The learned trial judge recognizing this, instructed the jury that the remark was not to be considered. The county attorney also apologized for having made a statement which was not authorized by the record. However, the statement made was before the jury. What use was made of it cannot be determined, but that it may have been to the detriment of the accused is obvious from the record. His possession of the chickens was explained by his testimony and by that of his witnesses in a manner consistent with his innocence, namely, that he brought them with him from Houston and that in passing through Dayton he was attacked by Lacy and resisted the attack because he believed that it was an attempt to rob him. The statement of the county attorney to the effect that forty-two chickens were stolen in Dayton and that forty-two chickens were found in the possession of the appellant was calculated to discredit the appellant's defense. See Stanchel v. State, 89 Texas Crim. Rep., 358.

It was charged in the indictment that the appellant "did unlawfully and fraudulently break and enter a house." In this averment the offense of burglary by breaking was charged. There was no averment that the burglary took place at night. In his charge the court instructed the jury that by the term "entry" was meant any kind of entry without the free consent of the occupant, and that it was not necessary that there should be an actual breaking. In submitting the matter for a finding, the court instructed the jury that if they believed from the evidence, beyond a reasonable doubt that appellant "by force" entered the house of Tadlock, etc. Taking into account the averment in the indictment, as well as the definition of the offense, the charge is subject to the criticism urged against it.

Proof of a breaking by the appellant was essential to sustain the conviction. The evidence on the subject of breaking was circumstantial. In fact, all of the evidence of guilt was circumstantial. If the door was fastened with the wire as described by the State's witness, and the wire was unfastened by the appellant so that the door might be opened, this would satisfy the law as to breaking. The evidence on the subject was not such as would dispense with the necessity of instructing the jury that to constitute an offense there must be a breaking. Bates v. State, 50 Texas Crim. Rep., 568; Newman v. State, 55 Texas Crim. Rep., 273; Crane v. State, 91 Texas Crim. Rep., 304, 240 S. W. Rep., 922.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*